W. Henry Williams, Respondent, v. C. F. Stephens *et al.*, Appellants.

### St. Louis Court of Appeals, December 3, 1889.

Practice, Trial: INSTRUCTIONS. An instruction, declaring the effect of correspondence, is a comment upon the evidence, and is erroneous, when such correspondence is only persuasive, and not conclusive, evidence bearing upon the intent of the parties, a matter of fact in controversy.

*Appeal from the St. Louis City Circuit Court.*—Hon. Jas. E. Withrow, Judge.

Affirmed.

*Taylor & Pollard*, for the appellants.

*H. M. Wilcox*, for the respondent.

Thompson, J., delivered the opinion of the court.

This action is brought against three defendants, to recover of them, jointly, the reasonable value of certain services, alleged to have been rendered, at their instance and request, by the plaintiff, in effecting the sale of the shares of capital stock, which the defendants severally

owned, in a company called the Southwestern Lumber and Timber Association. The answer was a general denial. A trial before a jury resulted in a verdict and judgment for the plaintiff. The defendants prosecute this appeal. Most of the errors assigned are founded on the view taken by the learned counsel for the defendants, that no evidence was adduced at the trial to show a *joint employment* of the plaintiff, by the several defendants, by which either should be held responsible for the commission, if any, to which the plaintiff would be entitled for the sale of the shares, belonging to the other defendants. We may observe, at the outset, that this position seems to have been taken for the first time in the motion for new trial We, nevertheless, assume that, if an action is brought to charge three defendants on a joint contract, and there is no evidence tending to show a joint contract, but the evidence tends to show three several contracts between the plaintiff and each of the three defendants, there can be no recovery, because the plaintiff has sued on one cause of action, and has proved a different cause of action.

But, after looking carefully through the record, we find ourselves unable to take the view that there is no substantial evidence of a joint contract. There was evidence to the effect that the three defendants, C. F. Stephens, N. J. Stephens and Fred W. Paramore, owned all the shares of stock in the corporation known as the Southwestern Lumber and Timber Association. which company was engaged in carrying on business on the St. Francois river, in Arkansas, where it had a sawmill, and other considerable property; that its stock was of the nominal value of fifteen thousand dollars, divided into one hundred and fifty shares of one hundred dollars each; that each of the three defendants was the owner, in severalty, of fifty of these shares; that the three defendants desired to sell and divest their interests in the entire property; that, for this purpose,

they authorized C. F. Stephens, who was the president of the company, to take charge of the matter, and. negotiate a sale; that C. F. Stephens, claiming to act for himself and the other two stockholders, proposed to the plaintiff, who was a broker, in Chicago, to effect a sale of the stock of the company, authorizing him to make the sale for twenty thousand dollars. The plaintiff testified that C. F. Stephens said to him, when the arrangement. was entered into : "The capital stock is fifteen thousand dollars, and we think we ought to have twenty thousand. dollars, but we will take less, for cash. He authorized me, or, rather, stated that they would take part cash and part in property, in Kansas City or St. Louis, on the basis of twenty thousand dollars, or would take less for cash—all cash—for stock; that I would be paid liberally for making the sale,"etc. The plaintiff also testified that, after this, he spoke to each of the other defendants. about the matter, and they referred him to C. F. Stephens, saying that it was in his hands. N. J. Stephens told him that the entire sale of the stock was left with his brother, C. F. Stephens, and that he would leave the entire matter with him. "Mr. Paramore said that they were very anxious to complete the sale of the stock, and the matter would be left with Mr. C. F. Stephens, and anything that I did with him, or through him, would be satisfactory to him,"—that is, to Mr. Paramore. The plaintiff's evidence was also to the effect that, subsequently, by correspondence with the defendant C. F. Stephens, and the defendant Paramore, he arranged to bring a party of gentlemen from Chicago, to inspect the plant of the corporation, which was done; that, subsequently, he induced other parties to examine the plant, and that these other parties. became the purchasers of all the shares of stock of the three defendants, for the round sum of twenty-five thousand dollars, in cash, paying, in point of fact, twenty-four thousand, four hundred dollars, a deduction.

of six hundred dollars having been made, because of an outstanding book debt. The transaction took the form of each defendant causing his several shares of stock to be transferred, on the books of the corporation, to the purchasers. There was no conveyance by the corporation itself.

At the trial, an effort was made by the defendants to show that the employment of the plaintiff was made by the defendant C. F. Stephens, as president of the corporation, for the corporation,—in short, that the contract was a contract between the plaintiff and the corporation, and not between the plaintiff and the owners of the shares of the corporation. In pursuance of this theory some letters, which passed between the parties to the suit, were put in evidence, in which reference was made to the sale of the *plant*, or of the *property*, but no reference to a sale of the *shares* of stock held by the respective owners. The defendants had the full benefit of this evidence before the jury, in an instruction given by the court at their request, in which the jury were told that, if they believed from the evidence "that plaintiff was employed, by the officers of said Southwestern Lumber and Timber Association, to sell the mill plant and land, and improvements connected therewith, but was not employed to sell the capital stock owned and held by the stockholders of said association," then they should find for the defendants. We need not dwell further on this feature of the evidence than to say, that the jury, by their verdict, found that the contract was, as shown by the plaintiff in his evidence, a contract to sell the entire stock of the corporators, and not a contract to sell the property of the corporation. But, of course, we do not wish to intimate an opinion that, if the defendants had jointly employed the plaintiff to sell the property of the corporation, and if the sale had been consummated in the form of a deed of conveyance, by the corporation, of

its property, the defendants would not have been liable. Certainly, there is no principle of law that would prevent the individual members of a corporation from becoming liable to a broker for effecting a conveyance of the property of the corporation, if they should see fit to incur such a liability. In this respect, we think the instruction was more favorable to the defendants than they had the right to claim.

Nor is the fact, that the transaction finally took the form of each stockholder transferring to the purchasers his holding of fifty shares of the corporate stock, decisive in favor of the view that the employment, if made at all, was a several employment of the plaintiff to sell the shares of each of the several defendants. On the contrary, we see no substantial evidence of a several employment. There is no evidence that the plaintiff was ever employed to sell the holding of either of the shareholders in severalty. There is no evidence that any proposal was ever made by either of the shareholders to the plaintiff to employ him to sell out the individual holdings of such shareholder. All the evidence is to the effect that the plaintiff was employed to sell either the entire holdings of all the shareholders, or, what would, in effect, be the same thing, the entire property of the corporation. All the shareholders desired to vacate their interests, in one transaction, in that property, and to that end they employed the plaintiff. If they employed him as individuals, it was a joint employment, and they are jointly liable. If the contract of employment was made with him by the corporation, and not by the individual corporators, then, of course, the corporation, alone, is liable. But the jury, upon substantial evidence, have determined that the employment was made by the defendants personally, and it is clear upon the record that, if an employment was made by the defendants personally, it was made by them jointly, and not by either one of them severally.

II.  The first instruction, given for the plaintiff, directed the jury that, if "defendant C. F. Stephens, acting for himself, and also for his co-defendants, N. J. Stephens and Fred W. Paramore, and with full authority from said defendants so to act, requested plaintiff to find them a purchaser for their said stock, and promised' plaintiff that if he would do so, they would pay him a commission for same," they, in substance, would be jointly liable for whatever would be a reasonable compensation for a sale of all the stock.  This instruction has been criticised as meaning that the jury should find a joint verdict against all of the defendants, for the services of the plaintiff, in finding a purchaser for the individual stock of each.  We do not think that the jury could have so understood the instruction.  There was no evidence that the plaintiff had been employed by, or on behalf of, each defendant, to find a purchaser for his individual stock.  The evidence was, as we have stated above, that all their stock was to be sold together, so as to carry their entire interest in the corporation and its property.  There was no evidence tending to show a contract with either of the three defendants, whereby the plaintiff undertook merely to sell his respective holding; nor does any such theory appear to have been advanced at any stage of the trial.  The defendants could not, therefore, have been prejudiced by the frame of words in the instruction above quoted.

III.  It is assigned for error that the court refused the following instruction tendered by the defendants: "The court further instructs the jury that the legal effect of the correspondence put in evidence by the plaintiff in this case tends to show that he was employed by the officers of the Southwestern Lumber and Timber Association to sell its plant, consisting of a saw-mill and lands; and there is nothing in said correspondence which legally tends to show the employment by the defendants in this case, as shareholders, to sell the shares of

capital stock, owned by them, in said corporation; and the plaintiff cannot recover unless he has shown to you, by a preponderance of evidence, that he was employed by the defendants to sell the shares of stock owned by them, respectively, in said association.'' We see no error in the refusal of this instruction. The letters, referred to, speak of the plant or the property of the corporation, and not of its shares. It is probably true, that these letters were relevant, as tending to support the theory of the defendants, that the employment was made by the corporation and not by the stockholders, personally; but we do not think that it follows, that the court was bound to single out this correspondence, and comment upon it to the jury, in the language in which this instruction is drawn. It is true that it is the office of the judge to declare to the jury the legal effect of any instrument of writing, when that becomes material; but it is not the practice, under our system of instructing juries, where a written correspondence is put in evidence as bearing upon the question of the intent of parties, and where there is other evidence, aside from the correspondence, to single out the correspondence, and declare to them the legal effect of it. This would have the effect of giving an undue prominence to the correspondence in the minds of the jury. Nor is such a practice proper, unless the conclusion is one which the law annexes to the language used. Here it is not a necessary inference from the correspondence, that the employment was made by the corporation, and, therefore, such an inference does not follow as a conclusion of law. On the contrary, the correspondence is consistent with the theory that the plaintiff was employed to sell all the shares of the individual shareholders. This, in substance and effect, would carry with it a sale of the plant. Business men, who do not look at legal refinements, but who look at the substance of things, would easily and naturally, in their correspondence, speak of

the value of the plant, and not of the value of the shares, for it is the value of the plant, less the corporate indebtedness, which determines the value of the shares. The jury were at liberty to draw from the correspondence the inference stated in the above instruction, but they were not bound to do so; and, therefore, the instruction was improper, as having a tendency to impress them with the view that they should draw such an inference from the correspondence. In short, it falls plainly within the class of instructions, repeatedly condemned by decisions in this state, in which the judge comments on particular portions of the evidence, and intimates to the jury the conclusions of fact which they should draw therefrom.

The other assignments of error are disposed of by what has been said. The judgment will be accordingly affirmed. All the judges concur.