MEYER BROS. DRUG COMPANY, Appellant, v. MASON McMAHAN, Respondent.

St. Louis Court of Appeals, May 10, 1892.

1. **Instructions:** COMMENT UPON THE EVIDENCE. It is a comment upon the evidence, and consequently erroneous, for the court to instruct the jury that, in determining an issue as to whether goods had been shipped to the defendant by the plaintiff, they were authorized to take into consideration the circumstance that the goods were not received by the defendant.

2. **Contradiction of Witness by Party Producing Him:** INSTRUCTIONS. A party is at liberty to contradict the testimony of his own witness by other competent evidence. An instruction, that he is bound by the testimony of his own witness, is, therefore, erroneous.

3. **Sales:** DELIVERY TO CARRIER. *Held* in the course of discussion that, for the purposes of an action for the purchase price of goods which the vendee has ordered the vendor to ship to him, a delivery of the goods by the vendor to the carrier constitutes a delivery to the vendee under the following circumstances, namely: When the particular carrier has been designated by the vendee as the one through whom the goods are to be shipped; also when no carrier has been designated, but the particular carrier either is the one usually employed for the shipment of goods from the place of the vendor to that of the vendee, or has been employed in other similar cases by the usage of the parties.

*Appeal from the Laclede Circuit Court.*—HON. W. I. WALLACE, Judge.

REVERSED AND REMANDED.

*Heffernan & Buckley*, for appellant.

No brief filed for respondent.

THOMPSON, J.—This is an appeal by the plaintiff from a judgment in favor of the defendant, in the circuit court of Laclede county, in an action upon an ordinary merchant's account. The appellant has filed an elaborate statement and brief, but no appearance

has been entered by the respondent in this court. We are somewhat embarrassed in disposing of the appeal on its merits, for the reason that the pleadings have been omitted from the transcript, probably by a clerical misprision. But the bill of exceptions discloses that the action was a suit at law to collect an ordinary itemized mercantile account, and the appellant in his statement so stated it, and further states that the answer was a general denial. As the omission is not one which affects our jurisdiction, we think we best exercise it by proceeding to dispose of the assignments of error which relate to the merits of the case, as they were developed on the trial and in the rulings of the judge in the instructions to the jury. The evidence showed without any controversy that, on February 27, 1882, the defendant McMahan and Robert Foster (not impleaded) were partners in a retail business at West Plains, Missouri; that on that day the partner Foster wrote out and mailed the following order to the assignors of the plaintiff, who were then partners doing a wholesale drug business at St. Louis, but who were afterwards incorporated under the corporate name of the present plaintiff, and who assigned this claim to the plaintiff:

"WEST PLAINS, Mo., February 27, '82.

"*Messrs. Meyer Bros., St. Louis, Mo.*

"GENTLEMEN:—Please fill bill which you will find inclosed. We have bought out Wm. Summers, formerly Summers & Pitts. For reference you can address Pitts & Summers. Hoping you can fill our order, we remain.					Very respectfully,

"FOSTER & McMAHAN."

The plaintiff then gave evidence by one of their employes, that this order was received by them, and that immediately thereafter the goods so ordered were put up by them, and shipped to Foster & McMahan over the St. Louis & San Francisco railroad. The

plaintiff also put in evidence the deposition of the freight agent of the railroad company, who testified that the goods were so shipped to Foster & McMahan at West Plains, and who identified the way bill upon which they were shipped, which way bill was put in evidence. This way bill was dated March 1, 1882, and sufficiently identified the goods and showed that the consignor was "M. Bros. & Co.," and that the consignee and destination were "Foster & McM., West Plains, Missouri."

So far the testimony was uncontradicted. Attached to the testimony of the plaintiff's principal witness, who was its bookkeeper, and who had charge of its credit department, was a letter purporting to be written from this defendant to the plaintiff. Concerning this letter the witness testified thus: "Here is a letter, dated at West Plains, May 12, 1882, postmarked, West Plains, Missouri, addressed to Meyer Bros. & Co., St. Louis, Missouri, and signed by Mason McMahan, the letter being in reference to the account of Meyer Bros. & Co. against Foster & McMahan, and being in reply to a letter from Meyer Bros. & Co. to Foster & McMahan, demanding payment of the account." The letter thus identified was as follows:

"WEST PLAINS, Mo., May 12, 1882 :
"*Meyer Bros. & Co., St. Louis, Mo.*

"DEAR SIR:—I was mistaken in the time, I was thinking it was ninety days, and paid out all money on hand for whiskey bill and hav'n't any money on hand now; but you shall have your money now as fast as I can get any in, and don't get uneasy, and I will pay you without fail. The partner I had beat me out of about $500, and has put me back, but you I will pay.

"Respectfully,
"MASON McMAHAN."

The first contradiction in the testimony relates to the genuineness of this letter. Robert Foster, who had been the partner of McMahan at the time when the goods were ordered, and who in fact wrote and sent the order for the goods, was produced and sworn as a witness on the part of the plaintiff. He could not identify the letter as McMahan's writing. He did not know who wrote it. McMahan testified positively that he never wrote the letter, and never authorized anyone else to sign it for him; and he denied that the signature was in his handwriting.

Aside from this the witness Foster (called as a witness for the plaintiff as already stated) testified in his examination in chief that he left West Plains somewhere between sixty and one hundred days,—about ninety days he thought,—after this order was mailed by him to Meyer Bros. & Co. He also testified that he never informed his partner that he had sent this order, and that the goods never were received and never arrived before he left West Plains. The defendant in his testimony admitted that the order was given for the firm. His language was, "We gave them an order for some goods." But the defendant also testified that the firm never received the goods. He said, "We did not receive the goods, but we received a letter saying that they could not ship the goods unless they had the money in advance, or required us to give reference. We never answered the letter, but ordered the goods from another firm and got them." His examination then continued as follows: "Q. What became of that letter that you received from them in relation to the shipment of the goods? A. I carried it around with me for some time, but lost it.

"Q. You sent the order to them, but they wrote you that they could not fill it, unless it was accom-

panied with the cash or satisfactory references? *A.* Yes, sir.

"*Q.* Did you have any further correspondence with them? *A.* I did not.

"*Q.* Did you ever receive a dollar's worth of those goods? *A.* I did not."

Further on in his testimony we find the following question and answer: "*Q.* You never received any notification that they had been shipped? *A.* No, sir." Not long after the date of the supposed transaction which is the foundation of this suit, the defendant, according to his testimony, bought out his partner Foster, and continued the business at the same place himself; but the exact date at which he thus bought Foster out does not appear.

Upon this evidence instructions were given both at the request of the plaintiff and the defendant on the hypothesis, that the defendant was liable if the firm of Foster & McMahan ordered the goods set out in the plaintiff's petition, and the same were shipped to them by Meyer Bros. & Co.; and, at the request of the plaintiff, the court instructed the jury to find for the plaintiff, if they should believe from the evidence that the goods were so ordered and were so delivered to the railway company, although they may never have been received by the defendant. It is thus apparent that the theory of both parties was that the defendant was liable, if the jury should find from the evidence that the goods were so ordered and delivered to the railroad company for shipment to Foster & McMahan.

Such being the evidence and the theory of both parties, the court, at the request of the defendant, gave to the jury the two following instructions:

"1. If the jury believe from the evidence the goods were not received, it is a circumstance to take

into consideration as to whether the goods were shipped or not.

"2. A party is not permitted to impeach his own witness, but, when he puts a witness on the stand, he vouches for his credibility and is bound by his evidence."

We take it that the giving of both of these instructions was erroneous. As to the first of them it is to be observed that the evidence was positive and cogent that the goods were shipped, and that the evidence to this effect was not in the least contradicted. While, in a doubtful case, it may be true that jurors are authorized to take into consideration the circumstance that goods are not received as evidence tending to show that they had not been shipped, we think that the court ought not to have directed them that they might take this circumstance into consideration in the present case, but that the direction was bad as being in the nature of a comment upon the evidence. *Williams v. Stephens,* 38 Mo. App. 163.

Upon the second of the instructions above set out we have to say that it was so clearly erroneous as to require a reversal of the judgment upon any theory. It is true that a party is not permitted to impeach his own witness, but that, when he puts a witness on the stand, he vouches for his credibility; but it is a monstrous proposition that he is bound by his evidence. If this were the rule, a litigant might be destroyed by the mistake or treachery of a single witness, and this without help. The general rule is that a party who puts a witness on the stand vouches for his credibility, in the sense that he thereafter precludes himself from impeaching the witness, directly by evidence of his bad character for truth and veracity, or indirectly by evidence of his having made statements out of court contrary to those made by him on the witness stand.

*Dunn v. Dunnaker*, 87 Mo. 597. But he is not *estopped* by the testimony of the witness, and is not *bound* by it, so as to be precluded from disproving it by the testimony of other witnesses (*Brown v. Wood*, 19 Mo. 475; *Edwards v. Crenshaw*, 30 Mo. App. 510, 515; *Price v. Lederer*, 33 Mo. App. 436); and it has even been conceded by our supreme court that the rule, which prohibits a party from impeaching his own witness, does not apply where a party is entrapped into offering as a witness one who testifies contrary to what the party, or others on whom he had a right to rely, have assured him his testimony would be. *Dunn v. Dunnaker, supra.*

We have more difficulty, in the state of the evidence, in dealing with the assignment of error which questions the propriety of the third instruction given for the defendant. This instruction was as follows: "3. The court instructs the jury that the burden of the proof in this case is on the plaintiff, and, unless they satisfy you, by a preponderance of evidence, that the firm of Foster & McMahan ordered the goods set out in plaintiff's petition, and the same were shipped to them, you will find the issues for the defendant."

The objection to this instruction is that it contains the hypothesis that the goods "were shipped to them;" and it is argued that it is immaterial whether the carrier shipped the goods or not, but that Meyer Bros. & Co. fulfilled the contract on their part, and delivered the goods to the defendant, when they delivered them to the railway company for shipment to the defendant. In so far as the instruction contained this hypothesis, it contradicted the second instruction given for the plaintiff, which told the jury to find for the plaintiff, if they should find that the goods were delivered to the railway company consigned to Foster & McMahan, although they might believe that the defendant never

received them. Our difficulty in dealing with this assignment of error grows out of the fact, that we discover no evidence in the record, either that Foster & McMahan designated the St. Louis & San Francisco Railway Company as the carrier by which the goods were to be shipped, or that such company was the usual carrier by which goods were shipped in cases of other transactions between the parties; or that it was the usual carrier for shipment of goods between the city of St. Louis and West Plains, Missouri. We are, therefore, in the state of the evidence, unable to put the trial court in the wrong foi giving this instruction; but we suggest, for the purposes of another trial, that the rule is, where goods are ordered for shipment, that a delivery to a carrier by the vendor for that purpose is a delivery to the vendee in three cases: *First.* Where the vendee has designated the particular carrier as the one by whom the goods are to be shipped, as in *Lindauer v. Meyberg*, 27 Mo. App. 181. *Second.* Where the carrier is not designated by the vendee, but the goods are delivered to the usual carrier employed to ship the goods between the two places, which would be a constructive delivery to the vendee, such as would make him chargeable for the purchase price, although the goods should not be delivered by the carrier to him. *Comstock v. Affoelter*, 50 Mo. 411, recognized in *Graff v. Foster*, 67 Mo. 519. But it must be shown by evidence that the carrier to whom the goods were delivered, was the usual carrier; the courts cannot know it judicially. *Comstock v. Affoelter, supra.* *Third.* Where no carrier has been designated by the vendee to receive and forward the goods, but where a particular carrier has been employed in other similar cases by the usage of the parties to the transaction, of which there was no evidence in this case. From these considerations it is apparent that, if the state of the

evidence on another trial should otherwise remain as it now is, it will be incumbent upon the plaintiff, in order to succeed, to give evidence tending to prove that the St. Louis & San Francisco Railway Company was the customary carrier by which goods are shipped between St. Louis and West Plains, or else that it was the carrier adopted by the usage of the plaintiff and the defendant in previous shipments.

For the errors above pointed out, the judgment will be reversed and the cause remanded. It is so ordered. All the judges concur.