JOHN H. KING, Respondent, v. PHOENIX INSURANCE COMPANY OF BROOKLYN, N. Y., Appellant.

St. Louis Court of Appeals, May 26, 1903.

1. Insurance: ORAL CONTRACT FOR: SUIT ON SUCH CONTRACT. Defendant under its general denial could not claim that it only agreed to issue the policy on the part that was burned and thereby avoid liability on the contract of insurance set forth in plaintiff's petition, for certainly plaintiff was not required to allege and aver compliance with the provisions of the policy admitted never to have been issued to him.

2. ——: ——: AGENT'S POWER TO MAKE SUCH CON-
TRACT, AMPLE. In addition to the authority given by the com-
pany's commission to Pace to represent it as its agent, there was
testimony showing that he was in the habit of countersigning and
issuing policies and collecting premiums therefor. *Held*, that his
authority was ample to authorize him to make a valid oral con-
tract of insurance for plaintiff.

3. ——: CAN NOT IMPEACH OWN WITNESS. When a party
offers a witness to testify in his behalf, he vouches for his credi-
bility and is therefore precluded from impeaching him either di-
rectly by evidence of bad character, or indirectly by showing that he
has made statements out of court at variance with those made by
him as a witness in court.

4. ——: ——: EVIDENCE OFFERED TO PROVE AGENCY
INCOMPETENT, AND CONSTITUTED REVERSIBLE ERROR.
In order for the statements of an agent to bind an insurance
company, he must be clothed with the powers of a general officer
or agent, and if not and only a special agent, then his statements
to constitute a part of the *res gestae* must be confined to the
special business which he is authorized to perform: *Held*, that
as Pace was but the special agent of the company, the testimony
to outside persons of a past transaction that he had had with King
were but hearsay and incompetent, and sufficient to reverse the case
because prejudicial to the company's interests.

Appeal from Lincoln Circuit Court.—*Hon. E. M.
Hughes,* Judge.

REVERSED AND REMANDED.

*Thomas T. Fauntleroy, C. H. Fauntleroy* and
*Norton & Avery* for appellant.

(1)   The first instruction is erroneous because it
allows the jury to find as a fact that Mr. Pace "had
authority to make contracts of insurance" [meaning
oral contracts such as the instruction submits]. There
was no evidence of such authority. On the contrary,
the written commission of Mr. Pace (insisted on by
plaintiff to prove Mr. Pace's powers as agent) fails
to confer such authority.    Embree v. Ins. Co., 62 Mo.
App. 132; Trask v. Ins. Co., 53 Mo. App. 625.   (2)
Where the agent's authority is in writing it can not be

enlarged by any implied power. Bank v. Schaumberg, 38 Mo. 228; Ashley v. Bird, 1 Mo. 640. It is error to instruct for a finding which has no testimony to support it. O'Fallon v. Boismenu, 3 Mo. 405. (3) An agreement to issue a fire policy implies the usual conditions of such a policy (Vining v. Ins. Co., 89 Mo. App. 311), and they should be stated and compliance therewith alleged. Bayse v. Ambrose, 32 Mo. 484; Ricketts v. Hart, 73 Mo. App. 653; Roy v. Boteler, 40 Mo. App. 213. (4) The admissions were also improper because made by a subordinate agent after the fact, and not as part of the *res gestae.* Price v. Thornton, 10 Mo. 136; O'Bryan v. Kinney, 74 Mo. 125; Aldridge v. Furnace Co., 78 Mo. 559; McDermott v. Railroad, 73 Mo. 516; Barker v. Railroad, 126 Mo. 143.

*W. A. Dudley* and *E. B. Woolfolk* for respondent.

(1) The court, on the authority of the agent's commission, might have declared as a matter of law that the agent had authority to make a verbal contract of insurance. It made him a "policy-writing" agent, "clothed with the full powers of his principal." Parsons v. Ins. Co., 132 Mo. 583; McCullough v. Ins. Co., 113 Mo. 606. All the late cases are to that effect. (2) There was no error in admitting the declaration of agent Pace when inquiries were made as to the status of the insurance. Pace was a general agent. Nickell v. Ins. Co., 144 Mo. 420; Laundry Co. v. Ins. Co., 151 Mo. 90; Wolf v. Ins. Co., 86 Mo. App. 410; Chamberlain v. Ins. Co., 80 Mo. App. 589. (3) And the company is bound by his declarations under the rules as to admissions of parties to the suit. Malecek v. Railroad, 57 Mo. 17; Northrup v. Ins. Co., 47 Mo. 435; Bates v. Holliday, 31 Mo. App. 162; Jackson v. Ins. Co., 27 Mo. App. 62.

REYBURN, J.—Plaintiff was erecting a frame building in Lincoln county to be devoted to purposes of religious worship. The building had been covered,

during its progress, by successive insurance policies issued by defendant, through its agent at Elsberry, John W. Pace, the first policy for a term of sixty days, the next for a period of one month expiring February 7, 1901; the amount of the risk in both these policies was the same, the precise recital in the last policy being "$750 on the one-story frame, shingle roof building and its foundations, to be occupied as a church when completed (builder's risk), and situated in survey 1724." On the day of the expiration of the second policy, an interview occurred between plaintiff and Pace, the agent of defendant, of which plaintiff's version is thus exhibited by the record:

"Q. When did you see him [meaning Mr. Pace] again about the insurance A. I saw him on the 7th of February, about ten o'clock; met him on the street just above the postoffice and I asked him, I says, 'Mr. Pace, when does this second policy expire?' He says, 'To-day at twelve o'clock;' I says, 'I want another one.'

"Q. Want another one? A. Yes, sir; he says, 'All right.'

"Q. Well, you told him you wanted another policy? A. Yes, sir.

"Q. What did he say in answer to that? A. He says, 'We will go down to the office' and we went to the postoffice and he got his mail out, and was kind of looking over his mail matters, and I says: 'Mr. Pace, if that policy lapses to-day at twelve o'clock I want another;' he says; 'When will you get the house done?' I says, 'I don't know whether I can get it done in five days or not.' I says, 'What limit of time can you write me a policy, what length of time, how short?' He says, 'I can write you as low as five days;' I says, 'I can't finish that building in that time;' he says, 'I will write you one for ten days;' I says, 'What will it cost me?' He says, 'It will cost you $2.25.' I says, 'Ain't that pretty high Mr. Pace for only ten days;' he says; 'I can't do any better on short rates,' and he stopped and

took out a little card (his rate card) and figured on that card a little bit and says, 'I will tell you what I will do, I will knock off my commission and make it even money two dollars;' I says, 'Write it up,' at that the conversation closed. I started to go out of the postoffice, I seen he was busy over his papers, and turned and walked back; I says, 'Mr. Pace, don't neglect to write that policy on the church when this second goes out;' he turned and pointed his finger at me and says, 'Mr. King, whenever I tell a man anything, that you can depend on;' I went on about my business.

"Q. In that conversation, what, if anything, was said about when you was to pay? A. I told him I would get the money for him about the last of the week; he says, 'Mr. King, it doesn't matter, any time,' he says, 'in the run of the month to pay it will do, so I can make my reports.'

"Q. Well, what company? A. With the Phoenix Insurance Company.

"Q. You say he said he would write you in the Phoenix Insurance Company of Brooklyn? A. Yes, sir; that was my understanding from the first to the last."

What transpired at the next meeting following the fire, which occurred February 9th is described by plaintiff in the following language:

"Q. Well, what took place when you saw him after the fire the first time; what did you see him about; what did you go to see him for? A. I went to get my policies.

"Q. Well, what took place? A. I had taken the money and met the old gentleman out close to Mr. Britt's shop, between his home and his office, and I was standing there waiting for him; waiting to get to see him; I had been to his house the day before. I couldn't see him and I just went out on the road there and waited there at the shop to see if I could catch him; finally he came along; I says, 'Mr. Pace, I want my

policy,' he says, 'All right,' and we walked down from Britt's shop to his office, and I walked up and took the money out and laid it down for the policies; he shoved back the money and says, 'I can't take that;' I says, 'Why?' he says, 'I sent your application in, Mr. King, and they turned it down on the limit of time.'

"Q. What did he say about giving you the policy? A. He give me the second policy; the one I never had got.

"Q. But didn't give you the ten days' policy? A. No, sir.

"Q. He said the company had turned the risk down? A. Yes, sir.

"Q. I will ask you if anything was said to you about an application having to be approved before the policy would go into effect? A. Nothing of the kind."

The petition of plaintiff alleged the authority of Pace, as local and established agent of defendant, to receive applications, take risks, insure, make out and deliver policies, collect and receive premiums for defendant, the application on the date mentioned by plaintiff to Pace as such agent, an agreement to insure the property described for ten days, and the further agreement in pursuance of such contract of insurance so made, and in consideration of the liability assumed by plaintiff to pay the premium, that defendant would issue and deliver to plaintiff an insurance policy. The petition proceeding, averred the total destruction by fire on February 9, 1901, of the property insured, the damage thereby to plaintiff in excess of the amount of insurance, notice of loss, and tender of the premium to defendant, concluding with the general allegation of due performance of all conditions of the contract by plaintiff.

The answer of defendant was a general denial. A jury trial resulted in a verdict for full amount in favor of plaintiff.

1. Appellant urges that the petition embraced in

the description of the contract of insurance an agree-
ment by defendant to issue a policy in the terms re-
cited, but that the case was submitted to the jury by the
instructions upon the theory of a contract consummated
with the agent without any policy.   The distinction be-
tween a contract to insure or to issue a policy and the
agreement contained in a policy itself has been recog-
nized and is clearly defined.   Baile v. Ins. Co., 73 Mo.
382.

The appellant insists further that upon plaintiff's
testimony, most favorably regarded, an agreement would
appear to issue a policy by the same company for the
same amount covering the same property, though for
a briefer period than the expiring policy, but impliedly
in the same form and containing the same limitations
and conditions.   This contention and the deductions
that might ensue therefrom are silenced and eliminated
by the face of the pleadings: if defendant desired to
rely on the non-performance of any of the conditions
in the policy to be issued, it should have interposed such
defenses by specific averments in its answer.   Such facts,
if present, being raised by legal implication, are not
constituted facts, necessary to be pleaded to state plain-
tiff's cause of action, and if defendant wished to urge
breaches of provisions in the policies employed in the
prior contracts of insurance by defendant of the same
property, it devolved on the defendant to plead those
terms of the instrument it claimed to have been con-
templated for the full expression of the contract.   Plain-
tiff was assuredly not required to set out and aver com-
pliance with the provisions of a policy never issued to
him.   Duff v. Fire Association, 129 Mo. 460.

2.   It is next insisted that no policy having been
issued, the plaintiff was not within the provisions of
section 7969 of the Revised Statutes, and the extent of
plaintiff's interest in the property destroyed was, there-
fore, in issue and wrongfully withheld from the jury.
At the trial in open court, the defendant, through its

counsel, recognized the entire destruction of the property and its value as equivalent to the insurance, as well as conceding that the above section of the statutes embraced the contract of insurance herein presented, so no further consideration of these assignments of error is deemed called for, or justified.

3. The plaintiff, as part of his proof, offered in evidence the commission, formally appointing Pace defendant's agent, which was executed by its president, and attested by its corporate seal, and gave him full power to receive proposals for insurance in Elsberry and its vicinity, fix premium rates, receive moneys, countersign, issue, renew and consent to the transfer of policies of insurance signed by its president or secretary. So far as the record discloses this was the full extent and measure of authority delegated to Pace, and there is no other evidence indicating right on his part to enter into any contract of insurance on defendant's behalf. Indeed plaintiff interposed vigorous objection to the admission of any evidence tending to exhibit the general authority of Pace, and at plaintiff's instance the court by its rulings confined the proof of the agent's authority to the commission introduced. If plaintiff had rested on the implied or apparent authority of Pace as the "policy-writing" agent of defendant, the claim now advanced, that he was the *alter ego* of defendant, with full power of his principal and his acts as obligatory on his principal as if they proceeded from it direct and extending to negotiating an oral contract of insurance on its behalf, might seem plausible and deserving of consideration. However, he did not adopt such position, but by his petition and the proof offered on its support, alike by declaring on an original in lieu of a renewal contract of insurance, and by the written commission in evidence, plaintiff placed his dependence on the actual power of the agent and made prominent the restricted authority of the latter. "A plaintiff can not recover upon a theory of the case adverse to that

upon which his petition proceeds, even if his evidence under other circumstances might authorize recovering on the adverse theory." Steinberg v. Ins. Co., 49 Mo. App. 265. In his appointment as its agent, defendant entrusted Pace with no authority to enter into an oral contract of insurance on its behalf, for authority to make oral contract in writing neither confers nor implies any power to make a parol contract. The authority of an agent is confined to the manner provided for its execution as well as by the limit imposed by the terms employed in creating the agency. Malone v. Philadelphia, 147 Penn. St. 416, and cases cited. Under familiar and cardinal rules of legal construction applicable to the agency instrument, the enumeration of the powers delegated, and the designation of the method of their enforcement by necessary implication inhibited the exercise of his authority in manner not expressed. The authority and power thus given involved a denial of its exercise in any but the manner prescribed. "The general rule admitting of but few exceptions [of which this case is not one] is, that when an express authority in writing is given, an implied authority can not take place." Bank v. Schaumberg, 38 Mo. 338. "Affirmative specification excludes implication." State ex rel. v. Gas Light Co., 102 Mo. 483; Heidelberg v. St. Francois County, 100 Mo. 69.

The record is destitute of any testimony tending to show authority in Pace to make any parol contract of insurance on behalf of defendant. While the plaintiff is not chargeable with actual knowledge of the precise scope of the agent's authority as shown by himself, yet the fact is clearly established from the method employed in the issuance of the preceding policies, by requiring applications therefor to be presented to the defendant itself, through the medium of the agent that plaintiff had been advised that the authority entrusted to the latter by his principal was not without some limitations. In the cases and authorities relied on by re-

spondent, the authority confided to the agent acting was unqualified and general, or such inference of general power was fairly to be drawn from the course of conduct or the business dealings adopted and conducted.

4.   Primarily, for the evident purpose of indicating the relation of Pace to defendant and the measure of his authority from his principal, plaintiff tendered Pace as a witness, and by him laid the foundation requisite for the introduction of his appointment.   In the progress of the trial, against the remonstrance of defendant, the court permitted plaintiff to introduce the testimony of various witnesses repeating conversations with Pace after the fire, concerning the transaction with plaintiff in which this controversy originated.   By introducing Pace as a witness, plaintiff vouched for his credibility, but he was not concluded by his testimony, and if he had been content to confine his examination to the original purpose, the production and authentication of the instrument defining his authority as defendant's agent, the general rule above applied might not be applicable, but after a concise cross-examination not extending to the transaction upon which the contract of parol insurance is founded, upon redirect examination plaintiff enlarged the extent of the examination of the witness, and proceeded to interrogate him upon this latter subject, not theretofore adverted to, and thereby adopted Pace as his witness, and thereafter precluded himself from impeaching him either directly by evidence of bad character, which was not attempted, or indirectly by evidence of his having made statements out of court at variance with and contravening those made by him on the witness stand.   Meyer, etc., Co. v. McMahan, 50 Mo. App. 18; Feary v. O'Neil, 149 Mo. 467; Hume v. Hopkins, 140 Mo. l. c. 75; Claflin v. Dodson, 111 Mo. 195; Nichols v. Nichols, 147 Mo. 387.   Nor was this testimony competent as admissions of the defendant made through its agent; the declarations of an agent to be admissible against his principal must par-

take of the nature of original evidence, and be made not only during the continuance of the agency, but in regard to a transaction then depending, and as part thereof, as *res gestae*. Barker v. Railway, 126 Mo. 143; McDermott v. Railroad, 73 Mo. 516; Aldridge's Admr. v. Midland, etc., Co., 78 Mo. 559; City of Chillicothe v. Raynard, 80 Mo. 185; Bergerman v. Railway, 104 Mo. 77; Huber, etc., Co. v. Hunter, 78 Mo. App. 82. The statements of Pace introduced were merely narratives of the controverted event already transpired, and should have been excluded.

The judgment will be reversed and the cause remanded.

PER CURIAM.—The majority of the court are unable to agree to the third paragraph of Judge REYBURN's opinion. Pace's authority as agent of the Phoenix Insurance Company was stated in his commission as follows:

"Be it known, That John W. Pace, of Elsberry, in the county of Lincoln and State of Missouri, is appointed and by these presents duly constituted agent of the Phoenix Insurance Company of the city of Brooklyn, with full power to receive proposals for insurance against loss and damage by fire in Elsberry, Missouri, and vicinity, to fix rates of premium, to receive money, and to countersign, issue, renew and consent to the transfer of policies of insurance, signed by the president or the secretary of the said Phoenix Insurance Company, subject to the rules and regulations of said company, and to such instructions as may from time to time be given by its officers."

In addition to the authority given in that commission, the testimony showed that Pace was in the habit of countersigning and issuing policies, and collecting premiums. His authority was ample to enable him to make a valid oral contract of insurance, according to the decision in Parsons v. Insurance Company, 132 Mo. 583.

and according to the general current of authority. 1
Joyce, Insurance, sec., 525; Hotchkiss v. Ins. Co., 5 Hun
(N. Y.) 9; Angell v. Ins. Co., 59 N. Y. 171.

In the Parsons case Kirk, the insurance company's
agent, undertook to modify the blank form of the policy
furnished him by the company under "his authority to
countersign and issue policies for the company;" and
on an authority of that scope it was ruled that he was
empowered to make an alteration in the usual form of
the contract.   It is true the opinion speaks about "an
agent of an insurance company authorized *to make con-
tracts of insurance* in the name of his principal; to
countersign, issue and deliver policies and receive the
premiums therefor," saying such an agent is clothed
with the full authority of his principal.   But if we look
closely to the facts, it will be seen that Kirk had no
power "to make contracts of insurance" other than was
given to him by his authority to countersign and issue
policies for the company.

The text of the section quoted from Joyce, which is
supported by the cases cited, says, "an agent entrusted
with blank policies signed by the president and secre-
tary, with authority to negotiate, fill up and issue the
same, may bind the company by parol contracts to
insure."

We think there is no doubt that Pace had power to
make an oral contract of insurance, and as the issue of
whether or not he did make one with King was sub-
mitted to the jury by appropriate instructions, their
finding on the issue settles that part of the case.

The trial court received in evidence over the objec-
tion of the appellant, certain statements made by Pace,
the tendency of which was to contradict his testimony
that no contract of insurance for ten days was made.
This testimony would have been competent by way of
impeachment if the respondent had not made Pace his
witness, but was incompetent for that purpose in view
of the course the trial took; and so the learned

circuit judge ruled.   We agree with respondent's counsel that the mere fact that the testimony was contradictory of Pace's would not affect its competency as part of respondent's case in chief, if it was otherwise competent.   But Pace was no such general officer or agent of the insurance company as could bind the company by his statements, not made by special authority or as part of the *res gestae* of business he was transacting.   To show the character of the objectionable testimony, we will quote some of it.   One conversation occurred with witness Morris, who related it as follows:

"I went up to see Mr. Pace the morning after the fire and asked him if that church was insured, Star Hope Church, and he says, 'No, I reckon not;' I says, 'I understand that it was;' 'Well,' he says, 'Mr. King had taken out a policy for sixty days and that run out and he renewed it for thirty days, and he asked for ten or fifteen days more,' the way I understood him, and he says, 'The company turned him down on that; they thought it was too short a time, and there must be something wrong with it, they wouldn't accept it,' and he says, 'I have got a dollar or two in that now I will have to lose as he has not paid for the last policy, the thirty-day policy.'

"Q.   That was all your conversation?   A.   I says, 'You are sure it ain't insured;' and he says, 'Yes.' "

That testimony was nothing but a narrative by Pace to outside persons of a past transaction he had had with King; therefore, it was hearsay and incompetent.   Adams v. Railroad, 74 Mo. 553; Scoville v. Glasner, 79 Id. 455; 2 Wharton, Evidence, secs. 1175, 1178.

We concur in Judge REYBURN's views on this point and think the case should be reversed and remanded because of the admission of said testimony, which had a very prejudicial tendency.