IN THE MATTER OF THE ESTATE OF MA-THILDA A. LARGUE, Deceased, EDWIN S. PULLER, Executor, Respondent, v. WILLIAM RAMSEY, HARRY RAMSEY, HALLIE RAMSEY, LYNN RAMSEY and GEORGE RAMSEY, Appellants.

St. Louis Court of Appeals. Opinion Filed January 8, 1918.

1. **APPELLATE PRACTICE: Wills: Contest: Evidence: Sufficiency:. Review.** Where there is no evidence of any substantial character or probative force to support the finding and judgment of the circuit court, adjudging that certain heirs contested a will and thereby forfeited their respective legacies under the will, the judgment cannot be sustained.

2. **EVIDENCE: Admissibility: Hearsay Evidence.** In proceeding to declare legacies forfeited under the will for alleged contest thereof by heirs, testimony of a third person as to statements of a legatee who actually brought the contest, but who was not a party to the instant proceeding, was inadmissible as hearsay.

3. **WITNESSES: Impeaching Own Witness.** A party cannot impeach his own witness unless tricked, and though he does not vouch for the truth of the testimony of his witness, he cannot call a witness who, as he knows will testify against him, and then impeach the witness by testimony as to contrary statements made out of court.

4. **EVIDENCE: Admissions: Conspiracy.** To render statements of one alleged co-conspirator admissible as against the other, some competent evidence must be adduced tending to establish the conspiracy.

In re Largue.

5. ———: ———: ———: Admissibility. In proceeding to forfeit legacies by reason of the heirs having contested the will, admissions of one heir, though an adverse party to the executor, while competent as against her, as admissions against interest, were not binding on the other heirs in the absence of evidence of a conspiracy.

6. ———: Conspiracy: To Contest Will. Where testatrix provided in will that if legatees contested the will, the legacies should be forfeited, and one legatee contested, evidence *held* insufficient to show conspiracy between such legatee and the others to bring a contest and avoid forfeiture of the legacies.

7. ———: ———: ———: Burden of Proof. Where testatrix provided by will that if any legatee directly or indirectly contested the will, his legacy should be forfeited, and one legatee contested, and the executor sought a judgment declaring a forfeiture of the shares of certain other legatees on the ground that they had participated in the contest, the burden was on the executor to prove that such legatees directly or indirectly contested the validity of the will.

Appeal from the Circuit Court of the City of St. Louis.—*Hon. James E. Withrow,* Judge.

REVERSED AND REMANDED (*with directions*).

*Edward D'Arcy* and *Robert M. Wilson* for appellants.

(1) The burden of proof was on appellant in the circuit court, Puller, executor. Hoyt v. Davis, 21 Mo. App. 235, 237. (2) Where a plaintiff makes the defendant his witness, he vouches for his credit and cannot impeach him. Bensberg v. Harris, 46 Mo. App. 404, 407; Ely-Walker D. G. Co. v. Mansur, 87 Mo. App. 105, 112; Dunlap v. Chemical Works, 159 Mo. App. 49, 62; 1 Gr. Ev. (14 Ed.), sec. 442. (3) A party cannot impeach his own witness by showing statements made by him out of court contrary to his testimony at the trial, except possibly where the evidence takes the examiner by surprise. 1 Gr. Ev. (14 Ed.), sec. 444; 40 Cyc. 2559; Dunn v. Dunnaker, 87 Mo. 597; King v. Insurance Co., 101 Mo. App. 163. (4) Even where the right of impeachment exists, it can be exercised only after calling to the attention of the witness the alleged contradictory statement made by him, and giving him

an opportunity to explain it. State v. Curtner, 262 Mo. 214; 1 Green. Ev. (14 and 15 Ed.), sec. 462; Bowman v. Coal & M. Co., 168 Mo. App. 703, 706-7; Swift & Co. v. Scott, 181 Mo. App. 1, 7-8; 40 Cyc. 2628. (5) In the absence of proof of the fact of conspiracy, the declarations of one of the alleged conspirators to a third party that a conspiracy existed, are not admissible. Such admissions are received only on the principle of agency. 1 Gr. Ev. (14 Ed.), secs. 233, 174, 176, 177; United States v. Gooding, 12 Wheat. 460; 8 Cyc. 683, note 88; U. S. v. Wilson, 60 Fed. 890. (6) This proceeding is equitable in its nature. Whaley v. Whaley, 50 Mo. 557; In re Estate of Meeker, 45 Mo. App. 186; Bradley v. Woerner, 46 Mo. App. 371; Stevens v. Larwill, 110 Mo. App. 140. The appellate court, therefore, has power to review and weigh the evidence. (7) Provisions in a will divesting an estate on condition subsequent are strictly construed, and the proof of the happening of the event should be definite and certain in order to effect a forfeiture of an estate. Jones v. Jones, 223 Mo. 424, 451-2.

*Schnurmacher & Rassieur* and *Jones, Hocker; Sullivan & Angert* for respondent.

(1) Respondent did not attempt to impeach any witness. All the witnesses for respondent, except the executor himself, were persons who had conspired to break the will. The Ramseys were direct parties (defendants) to the proceeding to forfeit their legacies. They were adverse parties on the record as well as adverse in interest. Their statements were, therefore, admissible on the ground (a) that they were admissions against interest (Babb v. Ellis, 76 Mo. 459; Padley v. Catterlin, 64 Mo. App. 629); and (b) that the declarations of one conspirator are admissible as to all the others. Mosby v. Commission Co., 91 Mo. App. 500. (2) This is not a suit in equity. It is a motion of the residuary legatee (originating in the probate court) to distribute to her the Ramsey legacies alleged to have been forfeited because of the

Ramseys' contest of the will, which made the gift conditional on their acceptance of the will. It is one of the steps in the administration of a decedent's estate and is a statutory proceeding, hence it is an action at law—not in equity. It is not the province of a court of equity to declare forfeitures, but to prevent them. Courts of law declare forfeitures. Trendley v. Railroad, 241 Mo. 96. (3) The finding of fact by the circuit court in a law case is conclusive and will not be reviewed on appeal, where there is any substantial evidence to support it. Caruth v. Richeson, 96 Mo. 192. "An appellate court will not interfere in regard to mere weight of evidence." Finkelnburg, Missouri Appellate Practice (2 Ed.), p. 162. (4) The circuit court made a finding of fact that the Ramseys aided their sister in her contest. Deference is shown to the finding of fact of the trial judge who heard the testimony, observed the demeanor of the witnesses when testifying, and weighed their credibility. Appellate courts will not weigh the evidence in law cases. Casey v. Gill, 154 Mo. 181; Van Liew v. Barrett, 144 Mo. 509. Nor pass on conflicting evidence. Blanton v. Dodd, 109 Mo. 64. Even in equity cases, our appellate courts, when passing on the facts as well as the law, pay deference to the finding of the chancellor when the testimony is evenly balanced. Benne v. Schnecko, 100 Mo. 250. So, also, as to the credibility of witnesses. Cox v. Cox, 91 Mo. 71. And when the testimony is conflicting. Erskine v. Loewenstein, 82 Mo. 301. (5) There is ample evidence in this case to warrant the finding of the trial judge that the Ramseys conspired with their sister and Mrs. Brandenburger to contest the will. Mosby v. Commission Co., 91 Mo. App. 500, 507. Donegan v. Wade, 70 Ala. 501. Smithsonian Institution v. Meech, 169 U. S. 398. Allen v. Forsythe, 160 Mo. App. 262, 269. Bank v. Keeney, 154 Mo. App. 285, 289. Wagner v. Binder (Mo. Sup.), 187 S. W. 1159. (6) Appellants have abandoned their contention in the circuit and probate courts that (a) the forfeiture clause of the will is invalid; (b) that

the executor did not have the right to appeal from the order of the probate court; (c) that the Ramseys were entitled to a trial by jury. Hence no authorities on these points are cited.

STATEMENT.—This is an appeal from a judgment of the circuit court of the city of St. Louis adjudging that the appellants have forfeited their legacies under the will of Mathilda A. Largue, deceased, by reason of conduct on their part in violation of a certain clause of the will.

It appears that Mathilda A. Largue died October 12, 1909, leaving a will, executed on July 6, 1909, which was duly admitted to probate by the probate court of the city of St. Louis. By this will these five appellants, viz., William Ramsey, Harry Ramsey, Hallie Ramsey, Lynn Ramsey and George Ramsey, and their sister Sadie Feree, all of Pittsburg, Pennsylvania, are bequeathed forty-six shares of stock of the National Bank of Commerce of St. Louis, to be equally divided among them. It is said that the appellants and Sadie Feree are grandnephews and grandnieces of the testatrix. By the will are also bequeathed certain shares of stock in trust for cousins of these appellants, referred to as the "Taylor heirs;" Mathilda A. Puller, wife of respondent executor, is the residuary legatee under the will. The twelfth paragraph of the will is as follows:

"In the event that any legatee, devisee or executor, contests the validity of this will, either directly or indirectly, I do hereby revoke the legacy, devise or appointment as executor of said legatee, devisee or executor so contesting this will."

It appears that shortly after the death of the testatrix the Taylor heirs instituted a suit in the circuit court of the city of St. Louis to contest the will. After a compromise had been effected with the Taylors by Mrs. Puller, the residuary legatee, Sadie Feree, on her motion, was made a party contestant in the cause, and thereafter prosecuted the proceeding. The cause

was tried in the circuit court resulting in a verdict and judgment sustaining the will. It is said that Mrs. Feree appealed from this judgment, but that her appeal was dismissed upon an agreement between her and the residuary legatee whereby she was paid the costs and expenses incurred by her in the contest proceeding.

Thereafter a motion was filed in the probate court by the residuary legatee seeking to have the court adjudge that these appellants had forfeited their said legacies, and for an order distributing this stock to the residuary legatee, because of the fact, as alleged, that appellants had violated the twelfth clause of the will, set out above, in that they had aided and assisted in the maintenance and prosecution by their sister, Sadie Feree, of the suit to contest the will, and had thereby, directly or indirectly, contested the will.

After having heard and considered the evidence adduced, the probate court found that none of these appellants did either directly or indirectly maintain or prosecute the said suit contesting the will, and that none of them had forfeited his or her legacy thereunder, and ordered that their respective interests in the stock be transferred and set over to them by way of partial distribution.

From this judgment Edwin S. Puller, one of the two executors of the will, prosecuted an appeal to the circuit court of the city of St. Louis, where, upon a trial before the court without a jury, it was found and adjudged that each of these appellants "did aid, assist and abet Sadie Feree, the contestant of said will, in said contest," and that by reason thereof each of them violated the twelfth paragraph of the will, whereby they lost the right to participate in the distribution of the estate. And the court ordered that the stock in question be transferred and set over to the residuary legatee by the executors. From this judgment the appellants prosecute the appeal before us.

At the trial in the circuit court the respondent executors, who had appealed from the judgment of the

probate court, offered in evidence the deposition of each of the Ramseys, appellants here. In giving such deposition each pointedly and repeatedly denied any participation, directly or indirectly, in the contest.

Harry Ramsey, the cashier of a bank at Pittsburg, testified that his sister, Mrs. Feree, spoke to him about prosecuting the will contest; that he was bitterly opposed to it and would have nothing to do with it; and that he did not contribute one penny to defray the expenses of the litigation. In this connection it may be said that it appears to be conceded that the overturning of this will would have presumably rendered valid a prior will executed by the testatrix; and that in this prior will Harry Ramsey was not a beneficiary. And touching the matter of his refusal to have anything to do with the contest proceeding he said: "My principal reason for my decision was, I was not a beneficiary in the other will."

George Ramsey, a bank clerk at Pittsburg, testified that Mrs. Feree discussed with him the matter of prosecuting the will contest, and that he told her that he could not afford to lose what "was coming" to him and was entirely satisfied with the legacy bequeathed to him; that he refused to have anything to do with the proceeding and refused to contribute anything to it, and did not do so. He further testified that while the proceeding was pending he did not discuss the matter with Mrs. Feree because he "did not want to get into any argument with her about it;" that at about the time of the trial of the suit to contest the will in St. Louis, he purchased St. Louis papers for "a couple of days," for the reason that he was "interested in the matter to the extent of hoping that it would be settled up and come to an end right away;" and that there was absolutely no understanding between him and Mrs. Feree regarding a contribution to make up any loss on her part.

Lynn Ramsey, a clerk in a savings and trust company in Pittsburg, testified that Mrs. Feree talked with him by telephone regarding the contest proceed-

ing. He said: "As nearly as I can recall, she said that she was going to contest the will and asked me if I would go in with her in it. I told her no, and that was the conversation at each time;" that he flatly refused to have anything to do with the matter, and "never contributed one cent of the expenses with which she carried on the suit."

Hallie Ramsey in testifying, said: "Mrs. Feree asked me to go in with her in this contest but I always refused her, and, in fact, advised her not to carry on the suit. I thought the last will was a very just one, was really more than we had any right to expect from our aunt." She declared that she positively refused to have anything to do with the matter from the beginning; that Mrs. Feree said nothing to her about the expenses of the suit, and that she contributed absolutely nothing thereto; that Mrs. Feree proposed that all of the appellants "come in" with her, the suit to be brought in her name, and that appellants agree to make up to her her loss, if any, but that the proposition was refused.

William Ramsey testified that Mrs. Feree spoke to him several times regarding the prosecution of the will contest proceeding; that she sought his advice, which he declined to give, saying that he did not intend to have anything to do with the matter; that he positively refused to have anything to do with it, made no agreement with Mrs. Feree, and did not bear any part of the expense.

A deposition of Mrs. Jeanette Ramsey, wife of William Ramsey, was also read in evidence by the respondent executor. She testified that she heard Mrs. Feree speak to her husband about the matter in their home, asking him if he wanted to join her in the proceeding; and that he said: "I decidedly do not;" that Mrs. Feree told her that "all of her brothers were furious at her for going into the will suit."

The executor also read in evidence the deposition of Sadie Feree. She testified that she spoke to her brothers, with the exception, perhaps, of Harry, and to

her sister Hallie, about "going in" with her in the will contest proceeding, and that "they every one refused;" that no one of them contributed one cent to the expenses, but refused to do so. She said: "They had nothing to do with the contest. They refused flatly when I asked them, so they had nothing to do with it."

As said above, the foregoing testimony was all given by way of depositions of these witnesses, which depositions were offered in evidence by respondent executor.

The executor Edwin S. Puller took the stand as a witness. Over appellants' objections he was permitted to testify to a statement said to have been made to him by Hallie Ramsey in October, 1911, after Sadie Feree had dismissed her appeal. He stated that Hallie Ramsey called at his office in the city of St. Louis and assured him that she had not in any manner participated in the will contest, and that she spoke of calling upon Mrs. Puller to tell her this; that the witness suggested to her that she ought to make a "full and frank disclosure" of all the facts in her possession concerning the participation of any of the Ramseys in the will contest, and that she replied: "I don't think I could do that. If I did that my brothers would lose their shares in the estate. . . . If I should tell what I know about this case, about my brothers' participation, I would incur their enmity," etc.

It appears Mr. Puller, who is a lawyer, was present at the time of the taking of the deposition of Hallie Ramsey in Pittsburg, but did not then question her regarding this statement. He testified that he then thought it inadvisable to do so. He further stated that in testifying before Judge Holtcamp in the probate court he referred to this statement of Hallie Ramsey; and that his recollection was that he quoted the statement to Judge Holtcamp substantially as it appears above. No record was kept of the testimony in the probate court.

The executor also read in evidence the deposition of Mrs. William H. Brandenberger, one of the Taylor heirs. Among other things, which need not be here noticed, she testified to certain conversations with Sadie Feree; and these portions of the deposition were read in evidence over the insistent objections of appellants. In the early part of the deposition, as it appears in the record, the witness states: ''She (Sadie Feree) said then that her family were not taking any of the burden of the contest; she was contesting alone. If she succeeded, they were to come in for the profits; if she failed, she was to stand the loss. She did not say that they would reimburse her for her losses out of their share. No,—Oh, if she won, you mean? Why, yes, sir; I think they would. She said that the members of the family, if she lost her share, why they were to reimburse her for what was lost.'' Later in the deposition Mrs. Brandenberger denies that Sadie Feree said that she was to be reimbursed by the members of her family; and she stated that if she said this she was confused and did not understand the question; that Sadie Feree's ''whole talk was the unfairness of the boys and their sister to want her to stand the losses, if there were any, and to share the profits in the case, . . . if there were any profits.''

These appellants called Hallie Ramsey as a witness. After again testifying that she and her brothers all refused to have anything whatsoever to do with the will contest, and were opposed to having it prosecuted, she denied that she made the statement to Mr. Puller to which he testified.

Judge Holtcamp was called as a witness by these appellants. When asked if Mr. Puller made any statement before him to the effect that Hallie Ramsey had said anything to indicate that her brothers had had anything to do with the will contest, the witness said: ''No, he didn't state that she had so said; his statement was to the effect rather that they had not had an interest in it so far as she knew.''

ALLEN, J.—(after stating the facts as above). The question raised below as to the right of the respondent executor to prosecute the appeal from the probate court to the circuit court is not presented here by appellants and consequently need not be considered. Likewise the ruling of the circuit court refusing to allow appellants' demand for a jury, is not questioned on appeal.

Appellants take the position that the record before us is to be reviewed as a proceeding in equity, i. e. that it is our province and duty to review and weigh the evidence, and pass judgment thereupon, as in a suit in equity; while, on the other hand, respondent contends that the action is one at law, and that the judgment should be sustained if there is any substantial evidence to support it.

This is not a suit in equity, but a proceeding begun in the probate court, which court, by virtue of its statutory powers had original jurisdiction thereof. While the probate court has no jurisdiction to entertain a cause of purely equitable cognizance, nevertheless in disposing of matters coming before it, within the scope of its jurisdiction, it may properly apply the rules both of equity and of the common law. [State ex rel. v. Bird, 253 Mo. 569, 162 S. W. 119.] The controversy is one pertaining to the distribution of an estate, and we think that it is one to be determined by a course of procedure analogous to that which obtains in courts of chancery. This is the rule which our courts have long followed in regard to questions raised as to final settlements of estates; and it is held that appeals in such cases are governed by the rules applicable to appeals in equity cases. [In this connection see: In re Estate of Meeker, 45 Mo. App. 186; Bradley v. Woerner, 46 Mo. App. 371; Finley v. Schlueter, 54 Mo. App. 455; In re Estate of Danforth, 66 Mo. App. 586; In re Estate of Branch, 123 Mo. App. 1. c. 577, 100 S. W. 516; Ansley v. Richardson, 95 Mo. App. 332, 68 S. W. 609.] We perceive no

good reason why this rule should not here apply; but we deem it unnecessary to definitely pass upon that question. If we are to review the evidence and draw our own conclusion therefrom, as in a suit in equity, the appeal may be very quickly disposed of by saying that the evidence overwhelmingly preponderates in favor of these appellants, necessitating a reversal of the judgment. On the other hand, conceding, *arguendo,* that the case is to be reviewed here as one at law, we are firmly convinced that, after eliminating certain testimony which, we hold, must be cast aside as having been improperly admitted, there is no evidence of any substantial character or probative force, to support the finding and judgment of the circuit court.

We take up, then, the assignments of error which pertain to the admission of the testimony to which we have just referred.

That the testimony of Mrs. Brandenberger, in her deposition offered by respondent as to the statements said to have been made to her by Sadie Feree, was incompetent, we think cannot be doubted. Sadie Feree was not a party to the proceeding. It is said that her legacy had been declared forfeited by the probate court, and that she abided that ruling. In any event she was not a party to this proceeding at any stage, so far as the record discloses. The testimony as to her statements—whatever weight might properly be given thereto, if competent—was hearsay, and was consequently inadmissible unless it can be said to fall under some exception to the hearsay rule. That respondent could not make it competent by first introducing the deposition of Sadie Feree and then undertaking to impeach her by these contrary statements said to have been made by her out of court, we think is obvious.

A party is not entitled to impeach his own witness by showing that the witness has made contrary statements out of court, with the qualification or exception that one may be permitted to do so where, by some trick or artifice, he has been misled or entrapped into

calling the witness. [See Dunn v. Dunnaker, 87 Mo. 595; Beier v. Transit Co., 197 Mo. 215, 94 S. W. 876; Carp v. Insurance Co., 203 Mo. 295, 101 S. W. 78; State v. Shapiro, 216 Mo. 359, 115 S. W. 1022; King v. Phoenix Ins. Co., 101 Mo. App. 163, 76 S. W. 55; Lewis v. Railroad, 142 Mo. App. 1. c. 585, 121 S. W. 1090.] While one does not vouch for the truth of the testimony of his witness, in the sense that he is absolutely concluded thereby (Lewis v. Railroad, supra, 1. c. 597; State v. Shapiro, supra, 1. c. 370), he cannot make available hearsay testimony by calling a witness who, as he knows, will testify against him—or offering the deposition of such a witness, as here—and then offering to impeach the witness by testimony as to contrary statements made out of court.

As to the contention that Sadie Feree and these appellants—and also the Taylor heirs—were co-conspirators, and that the declarations of one were admissible against the other, we need only say that before such declarations are admissible some competent evidence must be adduced tending to establish the conspiracy. [See Mosby v. Commission Co., 91 Mo. App. 500.]

As to the testimony of respondent executor regarding the statement said to have been made to him by Hallie Ramsey, this too was an attempt to impeach respondent's witness by statements of the witness out of court. However, since Hallie Ramsey was an adverse party, her statements out of court, if any, were competent as against her, as admissions against interest. But there is no contention that she at any time said anything prejudicial to her own interests. According to respondent's testimony, Hallie Ramsey said nothing to him to indicate that she participated directly or indirectly, in the will contest but absolutely denied such participation. And in the absence of some independent evidence, having some probative force and value, tending to establish the conspiracy charged, this declaration said to have been made by Hallie Ramsey—whatever might be its worth otherwise—is not binding upon or admis-

sible against her brothers, as being the declaration of one of several alleged conspirators.

Disregarding the testimony above held to be inadmissible, we perceive nothing in the record to establish the alleged conspiracy, or to sustain the judgment below. In behalf of respondent it is urged that a conspiracy need not be shown by direct and positive proof, but may be inferred from facts and circumstances appearing in evidence. This we readily concede. But we have searched this record in vain for anything that, in our opinion, fairly and legitimately suffices to support an inference that any of these appellants did take part, directly or indirectly, in the will contest proceeding. Their participation therein cannot be inferred from the mere fact that they are the brothers and sister of the contestant Sadie Feree. Respondent says: "The very fact that each and every Ramsey repudiates connection with the contest, or co-operation or arrangement with Sadie Feree in almost the identical words, is of itself a suspicious circumstance that may be considered. The court will find a remarkable resemblance in the very words used by each of the Ramseys while denying connection with the contest." But after having carefully read and considered the depositions of these appellants, we are not impressed by this argument. Neither do we perceive any merit in the argument that the fact that one or more of these appellants refrained from inquiring of Sadie Feree as to the suit, and purchased St. Louis newspapers to ascertain the result of the trial, tends to prove a participation in the contest proceeding.

Upon the residuary legatee, or the respondent executor in the circuit court, rested the burden of proving that appellants directly or indirectly contested the validity of the will in violation of the twelfth clause thereof. This burden we think was not successfully carried. Appellants do not here question the validity of this clause of the will, but say that since it provides for a forfeiture it ought to be strictly construed. [Jones v. Jones, 223 Mo. 425, 123 S. W. 29.] Its terms do not

appear to be of doubtful meaning. It provides for the forfeiture of any legacy only in the event that the legatee shall directly or indirectly contest the will. It therefore devolved upon the residuary legatee, or the respondent executor in the circuit court, to adduce some competent evidence of a substantial character tending to show such conduct on the part of these appellants as amounted to a contesting of the will by them, directly or indirectly, before their legacies could rightfully be forfeited. Nothing short of this would have sufficed. Evidence merely tending to make it appear that these appellants, or any of them, cherished a desire that Sadie Feree prevail in her suit, would not alone have been sufficient to bring them under the ban of this clause of the will, provided they did nothing to instigate the proceeding, kept aloof therefrom and did nothing to aid or further the prosecution thereof. It may well be assumed that Harry Ramsey did not desire a contest, as it was to his interest to have the will sustained. And if it can be said that there is any evidence tending to show that the other appellants, or any of them, looked favorably upon Sadie Feree's suit, all of the competent evidence goes to show that they advised against it, refused to have anything to do with it and did not further its prosecution either by any combination or agreement with Sadie Feree or by contributing to the costs and expenses thereof. In our judgment the evidence in this record wholly fails to afford any support for the judgment of the circuit court.

It follows that the judgment should be reversed and the cause remanded, with directions to the circuit court to enter judgment in favor of these appellants and to duly certify the same to the probate court. It is so ordered. *Reynolds, P. J.,* and *Becker, J.,* concur.