Opinion by Justice S. BERNARD GOODWYN.
 

 In this appeal, we consider whether the circuit court erred in denying a demurrer and holding that letters written to an attorney and a beneficiary did not violate a trust's no contest clause.
 

 Background
 

 Dimitri B. Georgiadis (Dimitri) established a revocable trust on December 21, 1989 that designated his new wife, Margaret Georgiadis (Margaret), and his only children, two sons from a previous marriage, Paul Georgiadis (Paul) and Basil Georgiadis (Basil) (collectively, the sons), as beneficiaries. The sons were named co-trustees of that trust.
 

 On August 27, 2012, Dimitri amended and restated the trust (August trust). The August trust removed the sons as co-trustees and appointed Dimitri as the trustee with Celia Rafalko (Rafalko or trustee) as the successor trustee after his death. Further, the August trust eliminated the previously required distribution to the sons upon Dimitri's death. Instead, Margaret was made the income beneficiary of those funds, thus deferring any distribution to the sons or other descendants until after Margaret's death.
 
 [1]
 

 The sons complained to Dimitri about the changes to the trust and they exchanged several emails. The sons expressed their displeasure with their father not providing for them or their families during Margaret's lifetime. They also questioned the appointment of Celia Rafalko, whom they believed to be a close friend of their stepmother, as the contingent trustee of the trust.
 

 Dimitri died on December 3, 2012. Paul wrote a letter dated January 3, 2013 to Timothy H. Guare (Guare), the attorney who drafted the August trust, asking him to preserve documents relating to Dimitri's estate plan, and stating that "the testamentary documents purportedly executed in your office on or about August 27, 2012 by my father shortly before his death will be the subject of a contest." On January 4, 2013, Paul wrote a letter to Margaret asking her to agree with the sons to terminate the August trust and distribute its assets with one-third going to her and one-third to each of the sons, claiming it would be in their mutual best interests to do so. The letter also warned that "[s]hould we be forced to contest the August 27, 2012 will and trust and file suit to set them aside," Basil and Paul would assert that there was undue influence upon Dimitri and challenge Dimitri's testamentary capacity when the changes were made.
 

 Soon after Paul had sent the letters to Guare and Margaret, Paul and Basil received separate letters from Rafalko, sent pursuant to Code § 64.2-775, which provided a copy of Dimitri's will and trust. Unbeknownst to the sons, the testamentary documents executed by Dimitri on August 27, 2012 had been superseded; Dimitri amended, ratified and reconfirmed the August trust on September 21, 2012
 (September trust). The September amendments added a provision allowing the trustee to distribute the trust assets to a charity of his or her choosing if Margaret and Dimitri died and no beneficiaries remained. Further, the September amendments added Article VII(L), which provided as follows in relevant part:
 

 L.
 
 No Contest Clause and Release of Claims.
 
 I intend to eliminate the possibility that any beneficiary of mine will challenge the decisions that I have made concerning the disposition of my assets during my lifetime or at my death, and my Trustee shall take all appropriate steps to carry out this intent. Accordingly, I direct the following:
 

 1. Absent proof of fraud, dishonesty, or bad faith on the part of my Trustee, if any beneficiary or potential beneficiary under this trust agreement shall directly or indirectly, by legal proceedings or otherwise, challenge or contest this trust agreement or any of its provisions, or shall attempt in any way to interfere with the administration of this trust according to its express terms, any provision I have made in this trust agreement for the benefit of such beneficiary shall be revoked and the property that is the subject of such provision shall be disposed of as if that contesting beneficiary and all of his or her descendants had predeceased me. Absent proof of fraud, dishonesty, or bad faith on the part of my Trustee, the decision of my Trustee that a beneficiary or potential beneficiary is not qualified to take a share of the trust assets under this provision shall be final.
 

 2. My Trustee shall obtain from each then living adult child and adult grandchild of mine a written release of any and all legal claims that such child or grandchild might make against the personal representative of my estate, my Trustee, any person who acted as my attorney-in-fact under a power of attorney executed by me, or any beneficiary under this trust agreement, relating to the conduct of any financial affairs prior to my death
 and the disposition of assets passing pursuant to my will, this trust agreement, any beneficiary designation that I may have executed during my lifetime, or my decision to cause assets to be titled in joint names with rights of survivorship with myself and another individual as joint owners.
 

 On January 7, 2013, Basil sent a letter to Margaret disavowing himself from the January 4 letter written by his brother. Neither Basil nor Paul were aware of the September amendments to the trust until after Paul had sent the letters.
 
 [2]
 

 In a letter dated January 31, 2013, Rafalko informed the sons that she was considering whether the letters sent by Paul violated the no contest clause and asked them for any information "you believe might bear on my decision," in writing on or before February 15, 2013. As required by the September trust, she also sent releases to be signed by the sons. She gave them thirty days to execute and return the releases. Rafalko acknowledges receiving the releases, which were signed on February 19, 2013 by both sons, and by which they released all claims concerning any challenge to the will or the trust or to their administration.
 

 In providing information solicited by Rafalko, Paul's counsel informed her counsel that Paul was unaware of the no contest clause when he wrote the letters, would not be challenging or interfering with the administration of the trust in any way and that the "clear import" of the January 4 letter was "to introduce the concept of a non-judicial settlement agreement," expressly authorized by statute. He also claimed that the specter raised concerning challenging the August trust was at most a threat which did not constitute a challenge, contest or interference with the administration of the September trust. However, her counsel noted in his memorandum that he had been told that if Rafalko decided that Paul had violated the no contest clause, Rafalko would "be in for a dog fight." Basil's explanation admitted that he "was aware of Paul's January 4 letter when he wrote it, but thereafter immediately disavowed it."
 

 In a letter dated May 28, 2013, Rafalko notified the sons that she had decided that the letters sent by Paul violated the no contest provision. Rafalko stated: "I have concluded that both of you have violated the No Contest Provision of the Trust. Therefore, neither of you is qualified to take a share of the Trust assets, and the descendants of each of you are also barred from taking a share of the Trust assets." Rafalko attached a memorandum drafted by her attorney. The memorandum concluded that the letters written by Paul were "an attempt" to "interfere" with the administration of the trust "according to its express terms," which justified disqualifying Dimitri's descendants as beneficiaries
 to the trust and that ignorance of the "no contest" clause was irrelevant.
 

 On June 24, 2013, the sons filed suit in the Henrico County Circuit Court seeking a declaratory judgment that the sons' conduct did not trigger the no contest clause and that they and their descendants are rightful beneficiaries of the trust. They alleged that Rafalko's interpretation of the no contest clause was arbitrary and capricious, contrary to law and public policy, and contrary to Dimitri's intent. They also argued that neither of them had taken any legal steps to contest the trust or interfere with its administration and that the letters they sent to Guare and Margaret did not violate the terms of the no contest clause.
 

 Rafalko demurred, arguing that the sons failed to allege that her decision was a product of bad faith, dishonesty or fraud and to plead any facts supporting a finding of bad faith, dishonesty or fraud. In response, the sons argued that Virginia law provided the court authority to review Rafalko's decision to ensure she was abiding by the terms of the trust even if she was not acting in bad faith. Alternatively, the sons argued that they had alleged in their complaint that Rafalko's decision was arbitrary and capricious, and that this allegation was enough to allege bad faith. The circuit court overruled the demurrer, finding that the complaint alleged that Rafalko did not act in conformity with the trust language, so there were sufficient grounds alleged for the action to go forward.
 

 After hearing evidence, upon trial of the matter, the circuit court issued a letter opinion that construed the no contest provision. The circuit court ruled that the language of the no contest clause limited its applicability to challenges directed at the September 21, 2012 trust documents. The circuit court ruled that
 

 [t]he use of the word "
 
 this
 
 " instead [of] words such as "any prior agreement" or
 
 the
 
 agreement or specifically mentioning all agreements must result in the conclusion that Mr. Georgiadis intended to require forfeiture if any of the acts described were aimed at
 
 this
 
 agreement, dated September 21, 2012. The letters in question specifically addressed the August 27, 2012 trust and did not address the trust with the added provisions of September 21, 2012.
 

 (Emphasis in original.) It interpreted the no contest clause language "this trust agreement," to mean the testamentary trust agreement documents executed on September 21, 2012 and not the ones executed in August or earlier. Therefore, the circuit court concluded any acts that would cause forfeiture had to be directed at the trust as it existed after the addition of the September amendments for the no contest clause to be applicable. The court found that the sons did not violate the no contest clause because their letters specifically addressed the August 27, 2012 trust documents and did not challenge the execution or operation of the September trust. Therefore, "no acts were done that would allow the trustee to enforce" the no contest provision added on September 21, 2012.
 

 Rafalko filed a motion for reconsideration, claiming that the circuit court had based its decision on a misquotation of the no contest clause because it inserted the word "agreement" after trust in its rendition of the no contest clause. Further, Rafalko argued that the sons presented no evidence that she had acted fraudulently, dishonestly or in bad faith, so her decision could not be overturned. She specifically asked the circuit court to address whether or not it found bad faith. In response, at the hearing on the motion to reconsider, the circuit court found that Rafalko had acted in bad faith. It also affirmed its previous decision. The circuit court entered a final order holding:
 

 a. That Paul D. Georgiadis and Basil D. Georgiadis, have not at any time prior to the date of this Order, engaged in any action violative of the provisions of Article VII(L)(1) of the Dimitri B. Georgiadis Trust dated August 27, 2012, as amended ("the Trust"); [and]
 

 b. That the determination made by Celia A. Rafalko, Trustee, as memorialized in her letter dated May 28, 2013 and the enclosed memorandum of law, that Paul D. Georgiadis and Basil D. Georgiadis had violated the provisions of Article VII(L)(1) of the Trust was made in bad faith.
 

 It ruled that the sons and their respective descendants are the rightful remainder beneficiaries of the trust. The court awarded the sons their attorney's fees and costs pursuant to Code § 64.2-795. Rafalko filed an appeal in this Court.
 

 Rafalko's assignments of error are as follows:
 

 1. The trial court erred in overruling the Trustee's demurrer because the [sons'] Complaint failed to allege that the Trustee acted fraudulently, dishonestly, or in bad faith when she determined that the [sons] were disqualified as trust beneficiaries.
 

 2. The trial court erred in finding that the Trustee's decision disqualifying the [sons] was made in bad faith, where the [sons] failed to adduce any evidence that the Trustee acted fraudulently, dishonestly, or in bad faith or abused her discretion in any way and the evidence was uncontroverted that the Trustee acted in good faith.
 

 3. The trial court erred in finding that the [sons'] conduct of writing threatening letters to the Trustee's lawyer and the Trust's Income Beneficiary, for the admitted purpose of convincing the Income Beneficiary to agree with them to terminate the Trust and distribute its assets in contravention of the Trust's dispositive plan, was not an "attempt to interfere with the administration of this trust according to its express terms" that disqualified the [sons] from any interest in the Trust.
 

 4. Because the [sons] had violated the provisions of the Trust and were properly disqualified by the Trustee, the trial court erred in awarding the [sons] their attorney's fees and costs.
 

 Analysis
 

 Initially, we note that there is no dispute in this case over whether, even though perhaps not favored, a "no contest" clause can be enforced. No contest clauses in trusts that are part of a testamentary estate plan are given full effect, as they are in wills.
 
 Keener v. Keener,
 

 278 Va. 435
 
 , 442,
 
 682 S.E.2d 545
 
 , 548 (2009). Furthermore, our case law is clear that such clauses, while enforceable, are to be strictly construed. We construe a no contest clause strictly "according to its terms."
 

 Id.
 

 When determining whether a beneficiary's actions have triggered a no contest clause, we strictly construe the language of the clause because the drafter chose the language and forfeiture is disfavored in the law.
 
 Id.
 
 at 442-43,
 
 682 S.E.2d at 548-49
 
 . In this case, the circuit court construed a no contest clause and concluded that the actions of the sons did not violate that clause. Our review of a judgment on appeal is limited to the errors assigned by the parties.
 
 Covel v. Town of Vienna,
 

 280 Va. 151
 
 , 163,
 
 694 S.E.2d 609
 
 , 616 (2010) ;
 
 see also
 
 Rule 5:17(c)(1)(i). We shall examine each of the appellant's assignments of error in order.
 

 Assignment of Error 1
 

 In her first assignment of error, Rafalko asserts that the circuit court erred when it overruled her demurrer because the complaint "failed to allege that the Trustee acted fraudulently, dishonestly or in bad faith when she determined that the sons were disqualified as trust beneficiaries." Rafalko notes that the trust states that a trustee's decision is final unless there is a showing of "fraud, dishonesty, or bad faith" on the part of the trustee. She argues that the circuit court erred in overruling her demurrer because the sons' complaint did not allege that she acted fraudulently, dishonestly or in bad faith when she decided that the sons violated the no contest clause and were disqualified as beneficiaries.
 

 The sons argue that the court did not err in overruling Rafalko's demurrer. They assert that while the trustee had discretion to remove the sons as beneficiaries to the trust, she was not allowed to act arbitrarily and capriciously in exercising that discretion. In the complaint, they alleged that Rafalko's decision that they had violated the no contest clause " 'relied upon an interpretation of the
 terms of the No Contest Clause that is arbitrary and capricious, contrary to law, contrary to the clearly expressed intent of the Grantor,' and 'in violation of the public policy of the Commonwealth of Virginia.' "
 We review a circuit court's decision on demurrer de novo.
 
 Ayers v. Shaffer,
 

 286 Va. 212
 
 , 217,
 
 748 S.E.2d 83
 
 , 86 (2013). "To survive a challenge by demurrer, a pleading must be made with sufficient definiteness to enable the court to find the existence of a legal basis for its judgment."
 
 Eagle Harbor, L.L.C. v. Isle of Wight Cty.,
 

 271 Va. 603
 
 , 611,
 
 628 S.E.2d 298
 
 , 302 (2006) (citation and internal quotation marks omitted).
 

 Code § 64.2-703(B)(2) states that a trust's language cannot remove "[t]he duty of a trustee to act in good faith and in accordance with the terms and purposes of the trust and the interests of the beneficiaries."
 
 [3]
 

 See also
 

 NationsBank of Virginia, N.A. v. Estate of Grandy,
 

 248 Va. 557
 
 , 561-62,
 
 450 S.E.2d 140
 
 , 143 (1994) ("Generally, a trustee's discretion is broadly construed, but his actions must be an exercise of good faith and reasonable judgment to promote the trust's purpose."). A trustee's exercise of discretion can be overruled by a court if the trustee has clearly abused the discretion granted him under the trust instrument or acted arbitrarily.
 
 See id.;
 

 Hoffman v. First Virginia Bank,
 

 220 Va. 834
 
 , 842,
 
 263 S.E.2d 402
 
 , 408 (1980) (holding that when a trust's language gives the trustee full discretion over the investment of trust assets, "[i]n order to impose liability, therefore, it must be alleged and proved that the fiduciary acted dishonestly or in bad faith, or abused the discretion vested in it");
 
 Rinker v. Simpson,
 

 159 Va. 612
 
 , 621-22,
 
 166 S.E. 546
 
 , 549 (1932) ("[W]here the trustees are ... exercising [their discretion] in such an arbitrary manner, as, in effect, to make it a means of destroying the trust which it was intended to aid and maintain, a court of chancery will intervene and compel the trustees to administer the trust in a proper manner, and at the proper time.").
 

 Thus, Virginia statutes and jurisprudence provide that, notwithstanding a broad grant of discretion or one specifically limited only by bad faith, fraud or dishonesty, a court is vested with the authority to evaluate whether the trustee's actions were consistent with the terms and purposes of the trust and in the best interests of the beneficiaries, and if they were not, to overrule the decision of the trustee as arbitrary and an abuse of discretion.
 

 The sons' complaint stated that Rafalko's decision that the no contest clause could be triggered with actions short of "prosecuting a legal action" was "arbitrary and capricious, contrary to law, and contrary to the clearly expressed intent of the Grantor." Further, they alleged that Rafalko's interpretation of the no contest clause such that she deemed the letters to be an "attempt to interfere with the administration of [the Trust] according to its express terms" was "arbitrary and capricious, contrary to the Grantor's intent, contrary to law, and in violation of the public policy of the Commonwealth of Virginia."
 

 The complaint alleged that Rafalko's decision to disinherit the sons and their descendants was contrary to Dimitri's "clearly expressed intent" as articulated by the trust language. In other words, it alleged that her decision was without authority because it was contrary to the purposes of the trust and an abuse of the discretion she was afforded under the terms of the trust. Thus, judicial review of the trustee's exercise of discretion is allowed pursuant to Virginia jurisprudence and Code § 64.2-703(B)(2) to discern whether the trustee has abused the discretion vested in her by the trust or acted arbitrarily. Accordingly, the circuit court did not err when it denied the demurrer and ruled that it was proper for the court to determine whether Rafalko acted in conformity with the authority granted under the terms of the trust.
 

 Assignment of Error 2
 

 In her second assignment of error, Rafalko complains that the circuit court erred in holding that the trustee's decision was made in bad faith because the sons
 "failed to adduce any evidence that the Trustee acted fraudulently, dishonestly, or in bad faith or abused her discretion in any way and the evidence was uncontroverted that the Trustee acted in good faith."
 After receiving the circuit court's letter opinion, Rafalko filed a motion to reconsider and asserted that the court had not addressed whether it found bad faith on the part of Rafalko. In direct response to Rafalko's inquiry about the issue, the circuit court ruled that Rafalko had acted in bad faith. Subsequently, the final order also contained the holding that the trustee's decision was made in bad faith.
 

 The assignment of error presented by Rafalko challenging the circuit court's finding of bad faith by its terms raises a sufficiency of evidence challenge. We do not reverse a circuit court's factual finding that an individual acted in bad faith unless the decision was plainly wrong or not supported by the evidence.
 
 Lovitt v. Warden,
 

 266 Va. 216
 
 , 241,
 
 585 S.E.2d 801
 
 , 815-16 (2003) (noting that a determination of bad faith is a factual finding because it is decided based on the court's determination of the mindset of a party). In determining whether there is evidence to support the circuit court's factual finding, we are not limited to the evidence adduced by the sons.
 
 Perry v. Commonwealth,
 

 280 Va. 572
 
 , 580,
 
 701 S.E.2d 431
 
 , 436 (2010) ;
 
 see
 

 Bratton v. Selective Ins. Co. of Am.,
 

 290 Va. 314
 
 , 322,
 
 776 S.E.2d 775
 
 , 779 (2015). We must review all of the evidence presented to the court in the light most favorable to the prevailing party.
 

 Id.
 

 A person acts in good faith when he or she acts with honest motives. Webster's Third New International Dictionary 978 (1993); Black's Law Dictionary 808 (10th ed.2014).
 

 In this particular instance, Paul wrote a letter to the lawyer who drafted the August trust instrument, asking him to preserve documentation because he was considering contesting the August testamentary documents. He also wrote a letter to his stepmother, asking her to consider terminating the August trust and insinuated that if she did not agree with that, he and Basil would contest the August trust documents. Both letters were sent before the sons knew that the August trust documents had been superseded by the September trust which added the no contest provision and other changes to the August trust documents which made it legally impossible for the sons and their stepmother to agree to terminate the trust.
 

 Upon learning of the no contest provision and other amendments to the trust executed in September, within three days of the
 January 4 letter being sent, Basil completely disavowed the January 4 letter. By the end of February, both sons had signed releases agreeing not to contest the will or trust or interfere with the trustee's administration of the trust in any way. Over three months later, Rafalko concluded that the letters written by Paul were an attempt to interfere with her administration of the trust.
 

 The stated purpose of Article L, which included the no contest clause and a provision for releases to be sent to the beneficiaries, was to "eliminate the possibility that a beneficiary would challenge the Trust." Upon notification of the existence of Article L and upon being presented with the releases required to be sent to them, the sons expressed their desire not to challenge the trust in any way and executed the releases. After the releases were signed, the intent of the no contest and release clauses was accomplished. The possibility that the beneficiaries would challenge the trust had been eliminated without litigation.
 

 However, the trustee thereafter used the trust proceeds to spend three months collecting information and consulting attorneys and others concerning whether the actions taken by the sons, before they knew of the no contest clause, could possibly be considered a challenge to the trust or an attempt to interfere with the administration of the trust.
 

 At trial, Rafalko offered into evidence several emails showing exchanges between the sons and their father after the sons found out that they would no longer be receiving a distribution from the trust upon their father's death. The emails say unflattering things about Dimitri, Margaret and Rafalko, including an accusation that Dimitri believed impugned Rafalko's honesty. Rafalko argued that the sons were "horrible people"
 

 even though neither the emails nor the sons' behavior toward their father was relevant to whether the no contest clause had been violated.
 

 Rafalko admitted that the named beneficiaries stood to gain nothing by her pursuing whether the letters violated the no contest clause, after the sons had signed releases of all claims and the stated purpose of Article L had been accomplished. Also, Rafalko had been told that declaring the sons in violation of the no contest clause based upon the January letters would result in a legal "dogfight" that would no doubt cost the estate some expense. Additionally, it was revealed through evidence at trial that if the
 sons were eliminated as beneficiaries, the remainder of the trust would be left for distribution at Rafalko's discretion pursuant to the terms of the trust. There is sufficient evidence upon which a court could determine that Rafalko's decision to find the sons in violation of the no contest provision was not motivated by a desire to carry out the testator's intent or to protect the beneficiaries and was therefore done in bad faith.
 

 Even if there was no evidence to support the circuit court's finding of bad faith, this assignment of error does not require reversal. As explained above, the circuit court's decision was grounded on its determination that the letters sent by the sons to Margaret and Dimitri's attorney concerned the trust as it existed on August 27, 2012. In its letter opinion, the circuit court, construing the no contest provision narrowly, clearly stated that the no contest provision which prohibited interference with "
 
 this
 
 trust agreement and any provisions made in
 
 'this
 
 trust agreement,' " meant that the applicability of the no contest clause was restricted to challenges directed to the September trust documents. (Emphasis in original.) Accordingly, the circuit court concluded that "[t]here was no prohibition against challenging any prior agreement or
 
 the
 
 trust agreement as written in 1989 or August 27, 2012." (Emphasis added.) This was the reason for the circuit court's determination that the sons' actions did not violate the no contest provision.
 

 Rafalko's second assignment of error does not challenge the operative holding of the circuit court-that the sons' actions did not amount to a contest because the no contest provision only applied to challenges aimed at the testamentary documents in place on September 21, 2012. At best, the finding of bad faith by the circuit court was an alternative or additional ground for the circuit court entering judgment in favor of the sons, in addition to the trustee acting arbitrarily or abusing her discretion by misapplying the terms of the trust.
 

 In summary, we reject Rafalko's second assignment of error because the record supports the circuit court's determination of bad faith. We also reject this assignment of error because there is no challenge to the primary holding by the circuit court that the no contest provision contained in the September 2012 testamentary document applied only to challenges directed against that document and that the sons' actions were directed only to the August
 2012 testamentary document, and therefore there was no interference with or contest to the September 2012 testamentary document. This alternative ground remains an independent ground for the circuit court's judgment.
 

 Assignment of Error 3
 

 In her third assignment of error, Rafalko claims that the circuit court erred in holding that the sons' letters, written "for the admitted purpose" to convince Margaret to agree to "terminate the trust and distribute its assets in contravention of the Trust's dispositive plan, was not an 'attempt to interfere with the administration of this trust according to its express terms' that disqualified the sons from any interest in the trust."
 

 The holding of the circuit court was that the actions of the sons were specifically directed to the August 2012 testamentary documents and the no contest provision only applied to challenges directed to the testamentary documents existing as of September 2012. Accordingly, this assignment of error, like the previous assignment of error, does not address the circuit court's construction of the no contest clause, which formed the basis of its conclusion that the no contest clause was not violated. Failure to assign error to the substantive ruling of the circuit court
 precludes consideration of whether that ruling was correct.
 

 Nevertheless, considering the trustee's arguments does not dictate a different result. "The question whether a no-contest clause in a [trust] has been triggered presents, on appellate review, a mixed question of law and fact."
 
 Keener,
 

 278 Va. at 441
 
 ,
 
 682 S.E.2d at 548
 
 . Whether particular conduct "constitutes a contest or attempt to defeat a will depends on the wording of the 'no contest' provision and the facts and circumstances of each particular case."
 
 Womble v. Gunter,
 

 198 Va. 522
 
 , 529,
 
 95 S.E.2d 213
 
 , 219 (1956). "Accordingly, [this Court] accord[s] deference to the circuit court's findings of historical fact, but review[s] questions of law de novo."
 
 Keener,
 

 278 Va. at 441
 
 ,
 
 682 S.E.2d at 548
 
 .
 

 The trustee maintains that the sons attempted to interfere with the administration of the trust when they sent the letters to Guare and Margaret. According to the trustee, the letters evidenced the sons' clear intent "to bring about the termination of the trust," which would have "directly contravened the trust's express terms."
 

 Therefore, she claims that the letters constituted an attempt to interfere with the trust's administration.
 

 The terms of the no contest clause that Rafalko claims the letters violated prohibit "an attempt in any way to interfere with the administration of this trust according to its express terms." A no contest clause should be strictly enforced according to its terms.
 
 Keener,
 

 278 Va. at 442
 
 ,
 
 682 S.E.2d at 548
 
 . We have stated that no contest clauses are strictly construed for two reasons. First, the testator or skilled draftsman acting at his direction has the opportunity to select the language that will most precisely express the testator's intent.
 
 See
 

 Womble,
 

 198 Va. at 531-32
 
 ,
 
 95 S.E.2d at 220-21
 
 . Second, provisions that require forfeiture are not favored in the law generally and will not be enforced except according to their clear terms.
 
 See
 

 Trailsend Land Co. v. Virginia Holding Corp.,
 

 228 Va. 319
 
 , 323-24,
 
 321 S.E.2d 667
 
 , 669 (1984).
 

 The no contest clause in this case does not prohibit discourse related to proposed conduct, even if actually undertaking that conduct would be prohibited. Construing this clause narrowly, as we must, it only prohibits actual attempts to interfere with the administration of the trust. Proposing actions whose goal, if accomplished, may interfere with the administration of the trust is not prohibited. Evidence that the sons "cherished a desire" to terminate the trust is not "sufficient to bring them under the ban of this clause."
 
 See
 

 Puller v. Ramsey,
 

 198 Mo.App. 261
 
 ,
 
 200 S.W. 83
 
 , 87 (1918).
 

 The trustee is charged with the administration of the trust and her responsibilities of administration are set forth in the trust. They include: dividing Dimitri's assets into the marital and family trusts; distributing income; paying debts; making productive use of Dimitri's property; allocating assets in the best interests of the beneficiaries; and dividing property into equal shares for distribution to Dimitri's descendants. Dimitri also incorporated by reference the numerous powers set forth in Code § 64.2-105.
 
 [4]
 
 These are the "express terms" of the trust regarding its administration that Dimitri wanted free from interference.
 

 The sons took no action that can be characterized as an attempt to interfere with the administration of the trust. Neither
 letter sent by the sons implicate any of the trustee's powers of administration or affect her ability to exercise those powers. First, as the sons alleged in their complaint, neither letter was sent to the trustee herself. One was sent to a fellow beneficiary, Margaret, and the other was sent to Dimitri's former attorney who prepared the trust documents. The trustee fails to explain how words stated to third parties about a previous version of the trust could interfere with her administration of the trust.
 

 Moreover, neither letter necessitated any action by the trustee, affected the trust's administration, or even attempted to do so. In their letter to their stepmother, the sons expressed their discontent with the terms of the trust and indicated their interest in a
 non-judicial settlement pursuant to Code § 64.2-709. Regardless of whether the ultimate realization of their proposal could ever interfere with the administration of the trust, the sons did not pursue this matter further.
 
 [5]
 

 In the letter to Guare, the sons merely instructed him to retain relevant documents because a legal contest was likely. Again, this action had no effect whatsoever on the trustee's administration of the trust "according to its express terms." Telling Dimitri's former lawyer to retain documents did not interfere, or attempt to interfere, with any of the trustee's powers of administration as set forth in the trust and Code § 64.2-105. The letter accomplished nothing more than the preservation of evidence at a time when the sons were evaluating their rights and remedies respecting their father's estate. When the sons learned of the no contest clause, the provision had its intended prophylactic effect and the sons committed no further action in preparation for a contest.
 
 See
 

 Lavine v. Shapiro,
 

 257 F.2d 14
 
 , 19 (7th Cir.1958) ("Plaintiff ... had a right to express her feeling of hostility as well as her opinion of defendant in any way, at any place, at any time she saw fit, without being vulnerable to the charge that she directly or indirectly aided in the contest of the will.");
 
 Estate of Wojtalewicz v. Woitel,
 

 93 Ill.App.3d 1061
 
 ,
 
 49 Ill.Dec. 564
 
 ,
 
 418 N.E.2d 418
 
 , 421 (1981) (allowing a legatee a "right to express a feeling of hostility toward and an opinion of the executor [as] he sees fit" without forfeiting his interests).
 

 A trustee has discretion to determine if the terms of a trust have been violated but not the discretion to define those terms as he or she sees fit.
 
 Rinker,
 

 159 Va. at 621-22
 
 ,
 
 166 S.E. at 549
 
 . A court must ensure that the trustee remains true to the intent of the testator as those intentions are expressed in the text of the trust.
 

 Accordingly, the record supports a conclusion that the letters at issue did not interfere with the trustee's administration of the trust, and should not have resulted in the disqualification of the sons as beneficiaries. Additionally, the assignment of error does not address the holding of the circuit court that the no contest clause only applies to challenges directed at the September 21, 2012 trust documents. Therefore we decline to reverse the circuit court on this assignment of error.
 

 Conclusion
 

 In summary, for the reasons stated we affirm the judgment of the circuit court finding that there was no error in denying the trustee's demurrer. We also affirm the circuit court's judgment that Paul D. Georgiadis and Basil D. Georgiadis and their respective descendants are rightful beneficiaries of the trust, subject to all provisions of the trust, because no assignment of error challenged the circuit court's holding that the no contest clause in the September 2012 testamentary documents only prohibited challenges directed to those testamentary documents, and therefore there is an unchallenged alternative basis for the circuit court's judgment.
 
 [6]
 
 Accordingly, we also affirm the circuit court's judgment awarding the sons' attorneys' fees and costs in the amount of $45,977.58.
 
 [7]
 
 Furthermore, even considering the second and third assignments of error, we conclude that the record supports the circuit court's judgment.
 

 Affirmed.
 

 According to Rafalko, under the terms of the 1989 Trust, prior to the August 27, 2012 amendment, the sons would have received a distribution of approximately five million dollars upon the death of their father.
 

 The circuit court attributed the letters to both Paul and Basil despite the fact that Paul authored both letters. Paul and Basil do not assign error to this finding.
 

 Notably, Code § 64.2-703(B)(11) states, "[t]he power of the court to take such action and exercise such jurisdiction as may be necessary in the interests of justice" cannot be abrogated by the terms of a trust. Thus, it appears that a court can always review a trustee's decision if the court believes it is in the best interest of justice. However, the circuit court in this case based its decision on the fact that it believed the sons alleged that Rafalko did not act in conformity with the trust language and made no finding regarding whether justice demanded it to act.
 

 The trust identifies Code § 64.1-57, the predecessor to Code § 64.2-105.
 

 Moreover, because the September amendment added a charitable contingent beneficiary, the stated goal of the letter was an impossibility, as the trustee noted in her decision memorandum.
 
 See
 
 Code § 64.2-709.
 

 In light of our holdings, we need not address the assignments of cross-error.
 

 The trustee assigned error to this award based only on the theory that the sons had violated the terms of the trust.